UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| **MICHEAL DESHAZO,** | CIVIL ACTION NO. 6:24-cv-00147-KKC |
|     **Plaintiff,** | |
| v. | **OPINION & ORDER** |
| **FEDERAL EXPRESS CORPORATION and JAYHILL TRUCKING, INC.,** | |
|     **Defendants.** | |

*** *** ***

This matter is before the Court on Defendants Federal Express Corporation and Jayhill Trucking, Inc.'s (collectively, "Defendants") Motion to Strike and Exclude Plaintiff's Experts (R. 41). For the reasons set forth in this Opinion, the Defendants' Motion (R. 41) is DENIED.

## I.  FACTUAL BACKGROUND

This action arises from a motor vehicle collision that occurred on January 17, 2024, on Interstate 75 in Rockcastle County, Kentucky. (R. 41-7 at 1.) A tractor-trailer owned and operated by Defendant Jayhill Trucking, Inc. was traveling southbound when its brake lines froze, causing the driver to pull partially onto the emergency lane. (*Id.*) A portion of the trailer remained obstructing the right travel lane. (*Id.*) Approximately five minutes and thirteen seconds later, a tractor-trailer operated by Plaintiff Micheal Deshazo ("Deshazo") struck the rear of Jayhill's semi's trailer. (R. 42 at 7.) Deshazo thereafter commenced this action against Defendants Federal Express Corporation and Jayhill Trucking, Inc.,[1] asserting claims for, *inter alia*, negligence. (R. 1–2.)

---

[1] The driver of Jayhill Trucking's semi, David Bennett, was a defendant in the original action. Bennett died of unrelated causes in April 2025 and Deshazo elected not to substitute Bennett's estate as a defendant. (*See* R. 36.)

On May 2, 2025, Magistrate Judge Ingram encouraged the Parties to seek out-of-court resolution, and on Jule 9, 2025, the Parties voluntarily scheduled a private mediation. Each of the parties thereafter received an Agreement to Mediate and a Mediation Procedures document from the mediator. (*See* R. 41-1, 41-2.) These documents stated that all of the mediation documents and communications are confidential and shall not be disclosed. (R. 41-2 at 1.) The mediation was set for September 16, 2025. On September 12, the Friday before mediation was set to occur, Defendants provided Deshazo and the mediator with four documents: a draft accident reconstruction report (the "draft HRYCAY Report"); two videos of the accident; and the police report. (R. 42 at 6.) The email did not contain the Defendants' mediation statement. (*Id.*) Defendants allege that the email's purpose was for the parties to prepare for the upcoming mediation. (R. 44 at 3.) Importantly, the email specifically indicated that the report was for mediation and each page of the draft HRYCAY report included a watermark indicating "For Mediation/Settlement Purposes." (R. 41 at 1–2.)

The mediation was unsuccessful, and the trial process continued. On October 1, Deshazo produced his expert identification and reports as required by the Scheduling Order. (R. 41 at 2.) He disclosed two retained liability experts in this case, Jesse Kirk and Dr. Ellie Francis. (R. 42 at 9.) Both Kirk and Dr. Francis' reports listed the draft HRYCAY report as material that each expert received and reviewed. (R. 41 at 2.)

The draft HRYCAY report is the Defendants' retained expert's breakdown of the accident. The Report contains photos of the scene, screenshots of dash camera video, scaled drawings of the tractor-trailers, table summaries, and numerous pages of expert analysis. The draft HRYCAY report ends with the experts' eight conclusions:

> Our opinions and conclusions have been set out in the body of this report based on the results of our investigation and analysis. These opinions include:
>
> 1. The Bennett tractor-trailer experienced a frozen brake line issue and came to a stop primarily in the right travel lane of I-75 Southbound, with the left

      rear corner of the Bennett trailer extended into the right portion of the middle lane.
2. The Bennett tractor-trailer activated its brake lights and hazard lights seconds after it came to a stop.
3. At least two tractor-trailers and a passenger car were able to pass by the disabled Bennett tractor-trailers in the 5 minutes and 13 seconds between when it first stopped and impact from the Deshazo tractor.
4. The Deshazo tractor-trailer was traveling between 59-60 mph in the right lane approaching the stopped Bennett tractor-trailer.
5. There is no indication that the Deshazo tractor-trailer activated its brakes prior to impact.
6. The last known travel speed prior to impact of the Deshazo tractor-trailer was 59 mph.
7. The uninvolved passenger car in the left lane did not block Deshazo's ability to change lanes prior to impact.
8. This accident was avoidable for Deshazo.

(R. 49 at 31.)

Believing that the deaft HRYCAY Report is confidential information designed specifically for mediation and/or settlement purposes, the Defendants filed the motion to strike and exclude and attached a redacted copy of the Draft HRYCAY report. (R. 41-4.) Deshazo filed a substantive response to Defendants' motion, and, in addition, moved for leave to file the draft HRYCAY Report on the grounds that the Court cannot adequately evaluate the Motion without reviewing the Report. (R. 42, R. 43 at 1.) The Court granted Deshazo's motion for leave to file. (R. 47.)

## II. ANALYSIS

Defendants argue that the disclosure of the draft HRYCAY report violates (1) Local Rule 16.2; (2) Federal Rule of Evidence 408; (3) the Sixth Circuit's *Goodyear* settlement privilege; and (4) the express terms of the Mediation Agreement.

The Court recognizes that the case law and policy considerations underlying Federal Rule of Evidence 408, the settlement privilege, and Local Rule 16.2 are deeply intertwined, such that authorities and rationales relevant to one frequently apply to the others. Local Rule 16.2 reflects this overlap: subsection (b) limits the discoverability of

3

settlement communications in a manner derived from *Goodyear*, while subsection (c) restricts the statements' admissibility consistent with the core purpose of Rule 408. The policy justifications are likewise identical, resting primarily on the recognition that statements made in settlement negotiations are often unreliable indicators of the merits, i.e., they frequently contain exaggerations or puffery offered in pursuit of compromise rather than as concessions of weakness. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 332 F.3d 976, 983 (6th Cir. 2003). Accordingly, while the Court will address Defendants' arguments under each provision separately to the extent practicable, the analyses necessarily inform one another.

**A. Local Rule 16.2**

The Defendants argue that Deshazo's unjustified disclosure of the HRYCAY report to his experts violates Local Rule 16.2, as that rule applies to mediation and settlement discussions. (R. 41-7 at 4.) In response, Deshazo argues that Local Rule 16.2 does not apply because the Parties' voluntary mediation was not court-ordered. (R. 42 at 11.)

Local Rule 16.2 provides in pertinent part:

> **Alternative Dispute Resolution**. *Upon motion of any party*, or sua sponte, *any judicial officer may require* parties in civil cases to consider some form of alternative dispute resolution process ("ADR"), including but not limited to, mediation, early neutral evaluation, minitrial, or arbitration, as follows:
> (a) Mediation may be conducted under the auspices of a private professional mediator or a judicial officer.
> (b) All communications in ADR proceedings are confidential, they are not subject to discovery, and such communications may not be disclosed to anyone other than the parties and ADR participants.
> (c) Positions taken and statements or concessions made during the mediation process shall not be admissible as evidence during any court proceedings.

Local Rule 16.2(a)-(c) (emphasis added).

There are no federal cases in the Sixth Circuit or Kentucky federal courts addressing whether Local Rule 16.2 applies to voluntary mediations. However, the Court finds the Sixth

4

Circuit's interpretation of the Eastern District of Michigan's Local Rule 16.3 instructive. That rule is similar to the Eastern District of Kentucky's Local Rule 16.2. The Sixth Circuit held that E.D. Mich. R. 16.3 is "permissive" and subject to modification. *Mencer v. Princeton Square Apartments*, 228 F.3d 631, 636–637 (6th Cir. 2000). In that case the plaintiffs requested that their claim be referred to mediation, and the parties agreed to be bound by the state mediation rules. The parties "could have modified the procedural rules" but chose not to. *Id.* Because of this, the Sixth Circuit held that the district court did not rely on its "inherent power" to grant mediation sanctions, rather, it was authorized by the consent of the parties. *Id.*

The plain language of Local Rule 16.2 indicates that it is triggered upon a party's motion or by the court's action. Neither party moved for a court-ordered mediation, nor did the Court require the parties to undertake ADR. At most, the Court "encouraged" settlement, but did not require it. (*See* R. 41-7 at 3 and R. 42 at 11.) Also, unlike *Mencer,* there is no evidence in the record that the parties consented to be bound by the Local Rules in their mediation. Accordingly, the Court finds that Local Rule 16.2 does not automatically apply to voluntary mediations. Because the parties did not agree to adhere to the Local Rules in their mediation, they are not bound by them.

### B. Federal Rule of Evidence 408

The Defendants argue that Deshazo's unjustified disclosure of the HRYCAY Report to his experts violates Federal Rule of Evidence 408(a)(2), as that rule applies to mediation and settlement discussions. (R. 41-7 at 4.) Deshazo concedes that "the mandate of the FRE 408 Rule . . . is clear and consistent with the open exchange of positions at mediation." (R. 42 at 19.) But, Deshazo argues, extending Rule 408 beyond its plain meaning to punish a party for sharing the other party's pre-mediation draft expert report with their own experts is a bridge too far.

5

Federal Rule of Evidence 408, "Compromise Offers and Negotiations" provides in pertinent part:

> **(a) Prohibited Uses.** Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> **(1)** furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and
> **(2)** conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408(a). The policy underlying Rule 408 is to promote the settlement of lawsuits by encouraging freedom of discussion with regard to compromise. *Goodyear* 332 F.3d at 979.

It is unclear whether an expert's draft report disclosed before a mediation constitutes "conduct or a statement" made during a compromise negotiation. The plain language and commentary of Rule 408 is unavailing. Additionally, the caselaw concerning Rule 408(a)(2) is sparce, and there are no cases in the Sixth Circuit specifically addressing the Rule's application to an expert's draft report.

The cases that Defendants cite in favor of issuing sanctions under Rule 408 involve situations in which a party shared information that was undisputedly confidential with their experts. *See United States v. EES Coke Battery, LLC,* No. 22-11191, 2024 LEXIS 25645 at *7 (E.D. Mich. Dec. 2, 2024) (The court ruled that "it is undisputed that the documents at issue were created and shared to further settlement negotiations"); *Irwin Seating Co. v. IBM,* No. 1:04-CV-568, 2007 U.S. Dist. LEXIS 10472 (W.D. Mich. Feb. 14, 2007) (Striking expert reports after the plaintiff's attorney provided confidential mediation documents to its experts in violation of a court order); *Pinkette Clothing v. Cosmetic Warriors,* No. CV 15-04950 SJO (AJWx), 2017 U.S. Dist. LEXIS 231199 (C.D. Cal. Jan. 20, 2017) (Striking expert report which relied on the parties' mediation statements). In this case, however, it is less clear the draft

6

HRYCAY report, which did not contain legal or financial information, falls within the same category as these cases. In any event, these cases are not binding on this Court.

Deshazo makes a compelling argument that this case is appropriately distinguishable from those cases the Defendants cite. Deshazo argues that the draft HRYCAY report does not contain the same type of sensitive information as the mediation statements and settlement documents in *EES Coke, Irwin Seating,* and *Pinkette.* (R. 42 at 12–16.) Deshazo contests that the draft HRYCAY report is classified as a settlement communication, which was not a disputed fact in the aforementioned cases. He argues that the draft HRYCAY report was prepared by Defendants' retained accident-reconstruction expert specifically for use in this litigation and for expert disclosure purposes, thereby serving a litigation purpose in addition to any role it may have played in mediation or settlement. (R. 42 at 16.)

Both parties make strong arguments. As previously mentioned, *EES Coke, Irwin Seating,* and *Pinkette* are not binding on this court. Because there is no clear indication from the Sixth Circuit, and the Defendants' Motion can be resolved on other grounds, the Court declines to take a position as to the applicability of Rule 408 here.

### C. The Sixth Circuit's Settlement Privilege

Defendants contend that the settlement-communications privilege recognized in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 332 F.3d 976, 980 (6th Cir. 2003), applies here. They argue that *Goodyear* authorizes courts to impose sanctions when a party improperly discloses confidential settlement information to its testifying experts. In response, Deshazo argues that the HRYCAY Report is not the type of document that the settlement privilege was intended to protect because it is mostly factual and was not created for settlement purposes. (R. 42 at 12.)

7

The Sixth Circuit recognizes a "settlement privilege." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 983 (6th Cir. 2003). This privilege expands Rule 408. *Id*. *Goodyear* arose in the context of a third-party discovery request seeking settlement communications that the litigants had exchanged prior to the lawsuit. *Id*. The court noted the "strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations" so that parties would "feel uninhibited in their communications." *Id*. at 980. Without a privilege, there is the chance that parties will forgo the negotiation process altogether. *Id*. *Goodyear* expanded the limitations on *admissibility* of settlement communications under Rule 408 to also prevent the *discoverability* of those communications under Fed. R. Civ. P. 26(b)(1).

Whether or not *Goodyear* applies in this case is subject to dispute. Defendants cite three cases in which district courts, relying on *Goodyear*, issued sanctions for violating the settlement privilege when the parties gave confidential documents to their experts. *See e.g., United States v. EES Coke Battery, LLC,* No. 22-11191, 2024 LEXIS 25645 at *7 (E.D. Mich. Dec. 2, 2024) (the Court ruled that "it is undisputed that the documents at issue were created and shared to further settlement negotiations"); *Irwin Seating Co. v. IBM,* No. 1:04-CV-568, 2007 U.S. Dist. LEXIS 10472 (W.D. Mich. Feb. 14, 2007) (Striking expert reports after the plaintiff's attorney provided confidential mediation documents to its experts in violation of a court order); *Pinkette Clothing v. Cosmetic Warriors,* No. CV 15-04950 SJO (AJWx), 2017 U.S. Dist. LEXIS 231199 (C.D. Cal. Jan. 20, 2017) (Striking expert report which relied on the parties' mediation statements). Defendants argue that the Court should inflict sanctions in accordance with these three opinions.

However, there is a valid argument that *Goodyear* does not apply in this case, because Defendants are seeking to limit the admissibility, not discoverability, of Deshazo's experts'

8

reports and testimony. *See Keith v. Bruce*, 2021 WL 6804124, at *7 (W.D. Ky. Nov. 2, 2021) ("*Goodyear* does not apply because the issue here does not involve the discovery of settlement communications."). The ruling in *Goodyear* is "quite limited." *Westlake Vinyls, Inc. v. Goodrich Corp.*, 2007 U.S. Dist. LEXIS 47857, *10 (W.D. Ky. 2007); *United States v. Paulus*, 015CR00015DLBEBA1, 2021 WL 4494607, at *6 (E.D. Ky. Sept. 30, 2021) ("Following Goodyear, several other district courts in this circuit have made clear that the settlement privilege is narrow."). District court opinions issued subsequent to *Goodyear* "frequently use a misnomer when referring to [the] *Goodyear* decision and tend to refer to it as creating a 'federal settlement privilege,' which implies a far more expansive ruling than the *Goodyear* panel announced." *Id.* at 10–11.

Although the caselaw cuts both ways, the Defendants make their position clear. They ask for the Court to set a precedent that:

> Parties and their counsel who engage in mediation, whether voluntary or court-ordered, can trust that statements, documents, and things made and exchanged as part of the mediation process will be confidential and that a breach of mediation confidentiality will have serious consequences, including the exclusion of evidence and expert witnesses.

(R. 44 at 2.) But it is not this Court's job to set a new precedent or expand the scope of *Goodyear* beyond what the Sixth Circuit has specifically defined. Because the Sixth Circuit has not addressed whether *Goodyear* permits the imposition of sanctions in the form of striking expert testimony, this Court will not decide whether the settlement privilege applies to the unique facts of this case.

### D. Mediation Agreement

The Defendants' final argument is that the express terms of the mediation agreement precluded Deshazo from giving the draft HRYCAY report to his trial expert. (R. 41 at 1.) Deshazo contests this, stating that there were no rules or parameters discussed for the mediation, and none were agreed to. (R. 42 at 5.)

9

Before the mediation, the mediator sent the parties proposed mediation procedures to govern the mediation. (*Id.*; R. 41-3.) Under the "CONFIDENTIALITY" heading, the rules stated as follows:

> The parties may agree that statements made during joint sessions are privileged settlement discussions. All parties **must** agree that any statements made, or information disclosed to me in private caucus is privileged and that disclosure cannot be compelled under any circumstances. All records, reports, or other documents I prepare or submitted to me in confidence by any party are confidential and disclosure cannot be compelled under any circumstances.

(R. 41-3 at 2) (emphasis in original). Additionally, the mediator sent an Agreement to Mediate to the parties. (R. 41-7 at 3.) The first and second sentences of the third paragraph of the Agreement to Mediate state:

> "Mediator and Mediation Participants agree that all mediation documents and mediation communications are confidential and shall not be disclosed. They are not subject to discovery or any other process and are not admissible into evidence in any judicial or administrative proceedings."

(R. 41-2 at 1.) The Agreement to Mediate contains four exceptions to this confidentiality provision, none of which apply here.

Deshazo first disputes that the draft HRYCAY report exchanged prior to the mediation constitutes a "mediation communication." (R. 42 at 5.) To the extent that the draft HRYCAY report is such a communication, Deshazo argues that it would be classified as a "statement made in joint session" which are not subject to confidentiality, because the parties did not agree to make joint session statements confidential. Defendants rebut this by stating that the Agreement to Mediate specifically says that "all mediation *documents* and mediation *communications* are confidential and shall not be disclosed." (R. 41-2 at 1) (emphasis in original).

The plain terms of the Agreement to Mediate controls. The terms of the agreement explicitly prohibit the disclosure of mediation documents. Although it is unclear whether the draft HRYCAY report is "conduct or statements made during compromise negotiations"

10

under Rule 408, or whether it is protected under *Goodyear*, it is undisputed that the report is a "mediation document." Deshazo has a valid argument that the draft HRYCAY report is a document made for litigation *generally*, but he cannot deny that the report was used for the mediation. The email Defendants sent to Deshazo specifically referenced using the draft HRYCAY report to prepare for mediation. Also, while not dispositive as to its character, the draft HRYCAY report stated "for settlement/mediation purposes." Because Deshazo disclosed a document used for mediation to his trial expert, he is in violation of the agreement.

The Court must determine the proper remedy for the breach of the mediation agreement. As stated earlier, the Defendants move to strike Deshazo's expert reports, exclude his experts from testifying, and preclude him from designating or calling any additional witnesses. Given the circumstances in this case, the Court finds that such drastic measures are unwarranted.

The Court has an implied power to impose sanctions or remedy violations with regard to expert testimony. *See Bowles v. City of Cleveland*, 129 F. App'x 239, 241 (6th Cir. 2005)("[A] district court has inherent power to 'protect[ ] the due and orderly administration of justice and ... maintain [ ] the authority and dignity of the court....'"); *Bray v. Husted, M.D.,* No. 11-56-GFVT, 2013 U.S. Dist. LEXIS 165352, at *23 (E.D. Ky. Nov. 21, 2013) ("the Court [has the power to exercise] its implied powers to disqualify or strike [expert witnesses] from this action."). Remedying violations involving expert witnesses is "part of the court's inherent power to preserve the public confidence in the fairness and integrity of the judicial proceedings. *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 278 (S.D. Ohio 1988).

Defendant believes the courts' sanctions in the similar cases of *United States v. EES Coke Battery, LLC,* No. 22-11191, 2024 LEXIS 25645 at *7 (E.D. Mich. Dec. 2, 2024)*, Irwin Seating Co. v. IBM,* No. 1:04-CV-568, 2007 U.S. Dist. LEXIS 10472 (W.D. Mich. Feb. 14,

11

2007), and *Pinkette Clothing v. Cosmetic Warriors,* No. CV 15-04950 SJO (AJWx), 2017 U.S. Dist. LEXIS 231199 (C.D. Cal. Jan. 20, 2017) should guide this Court's determination. However, as discussed earlier, these cases all involve clear disclosures of confidential information, which, in this case, is disputed. None of the courts imposed a sanction as severe as the one Defendants seek, even in cases involving multiple confidentiality breaches (*Pinkette*, 2017 WL 11883797, at *5) or disclosures that violated an explicit court order (*Irwin*, 2007 U.S. Dist. LEXIS 518866, at *10). Also, the cases cited by Defendants imposed sanctions for violations of Rule 408 and the settlement privilege. This Court declines to apply either of those rules in this case, and will fashion the proper remedy based solely off the breach of the mediation agreement.

Determining the extent of the breach requires this Court to look at the improperly disclosed draft HRYCAY report to see what type of advantage Desahzo gained. Also, comparing the draft HRYCAY report to the HRYCAY report submitted on November 17, 2025, as the Defendants' official expert disclosure (the "trial HRYCAY report") will help determine the extent to which the Defendants were prejudiced.

Upon review of the draft HRYCAY report, it appears to be the typical kind of expert report disclosed by parties before a trial. The draft HRYCAY report does not contain any settlement offers or concessions, does not contain any settlement position, does not make any settlement or mediation evaluations or argument, and does not contain any negotiations of any type. The draft HRYCAY report is distinguishable from the documents that were found to be confidential. *See EES Coke Battery,* 2024 LEXIS 25645, (Documents disclosed to the experts contained cost estimates and settlement communications); *Irwin,* 2007 U.S. Dist. LEXIS 10472 (Mediation statement given to expert); and *Pinkette*, 2017 WL 11883797 (same).

The HRYCAY report and the Defendants' trial HRYCAY report are substantially similar. Each report has identical formatting and organization with only slight additions

12

made to the trial HRYCAY report. The draft HRYCAY report lists eight conclusions and is 28 pages. The trial HRYCAY report lists the same eight conclusions with an additional two conclusions and is 32 pages in length. The only substantive differences between the two reports are that the Defendants' trial HRYCAY report has a brief section and conclusion addressing Deshazo's expert's report. (*See* R. 49.)

Because the HRYCAY report disclosed for trial is substantially similar to the draft disclosed at the mediation, imposing a severe sanction would be unfair to Deshazo. Such a ruling would punish Deshazo for sharing a "confidential" document that is nearly identical to the report that the Defendants were required to disclose before trial. In this case, prejudice suffered by the Defendants is minimal. At worst, Defendants were prejudiced by Deshazo's experts' ability to "springboard" off the work that the HRYCAY experts prepared.

In short, the mediation, held before Deshazo's expert-disclosure deadline, caused the Defendants to disclose their expert report first. This inverted the ordinary sequence in which the plaintiff discloses its experts before the defendant. In this case, the Scheduling Order (R. 25) set expert disclosure deadlines but did not list rebuttal expert deadlines. In order to alleviate any prejudice caused by the premature disclosure of the Defendants' draft HRYCAY report in violation of the mediation agreement, the Court will allow the Defendants to put forth a rebuttal expert. This tailored remedy effectively restores the Defendants to the position they would have been in without disproportionately penalizing Deshazo.

Accordingly, the Court hereby ORDERS as follows:

1) Defendants' Motion to Strike and Exclude Plaintiff's Experts (R. 41) is DENIED.
2) If Defendant's put forth a rebuttal expert, they SHALL make all of the proper disclosures within thirty (30) days of the entry date of this order.

This 3rd day of December, 2025.

Signed By:

*Karen K. Caldwell*  KKC

United States District Judge